The next case on our calendar this morning for argument is number 20-2964, Devin Miller v. Superintendent of Shawangunk Institution. Shawangunk, how do you say it? Shawangunk. Shawangunk. Good morning. Good morning and may it please the court. My name is Dan Perez. I'm a member of the court's Criminal Justice Act panel and I represent Devin Miller, the petitioner in this appeal. I would like to direct my comments this morning, first, to the issue that gave the respondent such fits in its brief, which was whether Mr. Miller was a suspect by the time he got to the police precinct, and there really should not be any question. Mr. Miller fit the description of the individual. Mr. Miller was tied to Mr. Cruz, who the family suspected was involved in the shooting of the decedent. But most importantly, Detective Boulding specifically testified under oath in a pre-trial hearing in Cruz's case. I had a hunch that Miller was the shooter. Not a hunch that he was simply involved or present, but I had a hunch that he was the shooter. Hunch equals reasonable suspicion equals suspect? My experience with law enforcement officers is that when they have a hunch, they view somebody as at least a potential suspect, if not a suspect. And when they try to backtrack the way that they did in this case, and they continue to do that to this day, it sort of reinforces the importance that they viewed him as a suspect from the outset. But the standard is not subjective. I'm sorry, Judge Raggi. The standard is objective, not subjective, correct? Understood, yes. And you face the not inconsiderable hurdle of having to argue that the district, that the state court misapplied clearly established Supreme Court precedent. So why don't you take us to where you think that error is? Well, the place that we feel that error was, Your Honor, was in its determination that Mr. Miller was not in custody, or that his freedom of movement had not been deprived in a manner consistent with the deprivation of custody for the purposes of Miranda. He's in- What case do you want us to look at for the conclusion that these circumstances under clearly established Supreme Court precedent compel that finding? I'll start with Miranda. Because Miranda informs us that the station house interrogation carries a badge of intimidation. Right, but that doesn't mean in their countless cases that not every station house encounter is an arrest. Of course not, Your Honor. But as the court is well aware, there is a totality of circumstances here. And there are, to answer Your Honor's question, obviously there are gaps in the record. For example, there is an unexplained eight hour gap in the record between the first and the second statement. I agree that the fact that he's there for 15 to 16 hours is perhaps your strongest factual or strongest fact point here. I'm just not sure I can conclude that the state court findings were contrary to clearly established Supreme Court law in explaining why they didn't think he was arrested yet. He throws up a hamburger. We don't know when he threw up the hamburger, but he throws up a hamburger. All of the law enforcement officers who testified at the hearing said the same thing. We did not tell him he was free to leave. So to indulge the notion that he was in fact free to leave when they viewed him as a suspected murderer from the moment that he arrived at the precinct is frankly to indulge a fiction. And that is the core of our argument. Is that a bidding consistent with letting him drive there on his own? They allowed him to drive there on his own, Judge Wesley. That's true. But they said to him, you need to go to the precinct. And when police officers- I mean, geez. You need to go? I mean, this is a fellow who has previously been convicted of a crime, done time in prison. And they say, you need to go. You think that's kind of compelling? I submit that it is, especially when the court considers that there is some indication in the record here. And as a matter of fact- Do you think that's somewhat inconsistent with or indicative of the fact that they didn't feel the- they had kind of zeroed in on him? They clearly had zeroed in on him, Judge. They zeroed in on him because of the fact that he- Wouldn't you want to think they'd ensure that he'd be there? I'm sorry, Your Honor? Wouldn't you think that they'd want to ensure that he'd be there? Of course. But the issue here is not necessarily whether they had a hunch. It's not specifically whether they viewed him as a suspect. We're focusing on that primarily because the respondent goes through such lengths. If you look at page 6 of their brief- It's a result of a behaviorist lens of not applying clearly established constitutional principles unreasonably. Understood, Your Honor. But if it was that easy, then the respondent wouldn't feel compelled on the same page of their brief to write, Detective Boulding did not have a hunch- I'm not bound by how worried your opponent is with regard to whether the standards met or not. I'm concerned with the findings of fact by the trial court and or the habeas court. Right. And the findings of fact certainly are- There were findings of fact. There was a fulsome hearing. And again, there are gaps in the record. It should trouble the court as a reviewing court that none of these officers, none of these detectives had any notes. The guy is there for 15 hours and nobody takes any notes. They're all doing this based on their recollection. Boulding clearly, clearly manipulated his testimony. He tailored his testimony from the Cruz pretrial hearing to the Miller pretrial hearing from I did view him as a suspect to I didn't view him as a suspect. And that flexibility that they build into the process, this court should infer from that, that they viewed Devon Miller as a suspect and that, therefore, he was not free to leave. There is simply no reasonable way to view this record. It is our position to come away with an inference that Devon Miller, who was suspected of shooting this woman at point-blank range, was free to leave based on- And what about the videotaped confession given after two Miranda warnings and the passage of a lot of time from his original arrival at the station house? Why would that be excluded? Wouldn't that be enough to proceed here? Well, no, Judge Cornyn, that touches on our two-step interrogation argument that they had elicited the confession and then Mirandized it. But I don't think that the evidence was particularly strong that they met the two-step standard for, you know, generally you have to go forward and continue questioning, interrogating in a focused way and elicit a full confession, whereas his videotaped confession and his taking them to, you know, see the-find the gun and so on was- gave so much more detail and his acting out of the crime and so on was at a level of detail and it was a compelling confession, let us say. Why was that properly-why was that improperly admitted? Again, Your Honor, I appreciate the court's point. The best argument that I can make on this record is that Miranda had been violated previously once they violated his Miranda rights and the fact that he had been at that point that he gave the videotaped statement. He had been at that police precinct by himself without access to a lawyer, without access to a family for over 12 hours. Miranda violation is found by whom? I'm sorry, Your Honor. The Miranda violation you've just identified is found by whom? Well, I'm asking this court to find the Miranda violation. The state court did not find it. Of course. Okay. Of course. And if I am correct, nothing in the record before us indicates that before the state court, your client stated or indicated in any way that he wanted to leave. Am I right? There is no such record evidence, Your Honor. Okay. All right, thank you. All right, Mr. Perez, you have three minutes of rebuttal. Thank you. Thank you very much. Thank you, Ms. Perez. Ms. Farrington. Good morning, Your Honors. May it please the court, Laurie Farrington from the Office of the Bronx County District Attorney for the Respondent Superintendent. Your Honors, in this matter, the district court's well-reasoned opinion that the state court's decision that Petitioner was not in custody should be affirmed. Here, there is absolutely no restraint of Petitioner that was equivalent to a formal arrest. Petitioner was allowed to drive to the precinct on his own, in his own vehicle, with his family, with no police escort. He could have gone anywhere in the country. He could have gone to the airport. He was allowed to drive there on his own. That may have been the case when he first arrived at the station, but as it developed, if I understand it correctly, they're interviewing the two fellas. Yes. And the other man says, you know, tries to put the blame on the defendant here, or the petitioner here. Correct. And at that point, do we have a concern that objectively, neither of them could have thought they were going to be allowed to leave, because at that point they were inculpating each other? No, given the circumstances here, given the circumstances here, no. First of all, Petitioner- So you think it would have been objectively reasonable for somebody to think if I stand up and leave, they're going to let me leave? In this case, yes. And I think we need to look at this case through the lens of Petitioner's behavior before he even arrived at the precinct. He visited Cruz in the hospital that night. He saw detectives in the hospital that night. He returned the next day, knowing full well that the officers would be there. He spoke to the officer who was stationed in Cruz's hospital room and, as was later brought out in trial, asked him about a missing car. This was a man who was sticking as close as humanly possible to Cruz to see what Cruz would do, to see whether Cruz was implicating him. So it is not unreasonable here that Petitioner stayed at the precinct and did not request to leave, and stayed at the precinct speaking to the cops, not because he believed he was in custody, but because he wanted to be as close to Cruz as possible to find out what Cruz was doing. And, notably, after Cruz did inculpate Petitioner, Petitioner was completely unaware of this. Detective Martin, who was questioning him, not Detective Boulding, who may have had a hunch. Detective Martin never told him at this point that Cruz had implicated him. The first thing he told him was, Cruz said, you got a gun. And this was around after 11 p.m. at night. So Petitioner was not remaining in the station house because he thought he was under arrest for homicide, because he did not know that Cruz had implicated him. And, moreover, the detectives themselves were not prepared to arrest Petitioner on Cruz's statement. So he was not under arrest subjectively or objectively at this point. The officers, Detective Martin and Detective Garrity, never accused Petitioner. They never accused him of lying. They never said, we know you did this. We know you're not telling us the truth. There was none of that. And in regard to the Seabird issue, regarding a two-step interrogation, there was no intent here to elicit a confession and then have that confession simply repeated after Miranda warning. Still, given the protracted timeline here and the conversation that goes on for ten hours, you know, back and forth, people coming and chatting with him, why isn't it reasonable to infer that that's exactly what they were aiming for? They were getting information from Cruz. They were talking with Miller and hoping that they would get a straight statement from one or both of them. And then when it became clear that they were starting to inculpate each other, then they started administering the Miranda warnings and get a full confession thereafter. Doesn't that timeline suggest that there was a kind of game plan here? No, under these circumstances, no. In fact, Detective Martin repeatedly testified that he thought Petitioner had nothing to do with this. He thought Petitioner was a witness. He thought Cruz was simply inculpating Petitioner to cover himself because he had shot his girlfriend. Detective Martin's only, subjectively speaking, only intent here was to see if Petitioner had witnessed Cruz shoot his girlfriend and if he would admit to that. And as you are aware, it is not their subjective intent. It is whether the subjective intent is manifested. And there was absolutely no manifestation here of an intent to arrest Petitioner as a suspect in this homicide case because according to Detective Martin, who was questioning him, he didn't even believe that, let alone manifest that belief. He thought, and he's quite specific about this in his hearing testimony, he says, This guy had me convinced. I kept saying, Carlos Cruz did this murder. Carlos Cruz did this murder. And in fact, he also says when Petitioner does admit that he shot Cruz in the leg, he's shocked and immediately administers Miranda warnings at that point. There is no confession to shooting Chelsea before Miranda. And in fact, his first written statement after Miranda, he still does not inculpate himself. And since there was no Siebert issue, no two-step interrogation process here, the statements after Miranda are admissible regardless of the pre-Miranda statements. And secondly, in terms of the voluntariness of Miranda, again, there is absolutely no evidence here that he was coerced to waive his Miranda rights or that the situation in and of itself was so coercive that he was deprived of the opportunity to knowingly and voluntarily waive his Miranda rights, which he did twice. And finally, Your Honors, just briefly, in any event, the video statement, which is the statement where he provides the detail and describes how he leaned and shot Chelsea, how many times he shot, et cetera, was sufficiently attenuated from all of his other statements. There was more than a two-hour gap. There was a reiteration of the Miranda rights. There was a different questioner, which was the Assistant District Attorney. Detective Martin, who took the final inculpatory written statement, was not present at this point. It was Detective Boulding, who never questioned Petitioner, and it was in a different room. Given all of these circumstances, and again, just briefly to Your Honors' statement regarding the 15, 16 hours, again, looking at Petitioner's behavior even before he arrived at the station house, it is clear that Petitioner was not remaining because he believed he was in custody, because he believed that detectives who thought he had just committed a homicide would allow him to drive to the station on his own, would allow him to go to the bathroom by himself and perhaps walk out of the station house, but because he was sticking close to Carlos Cruz, because he was concerned that Carlos Cruz was going to inculpate him, not because the detectives did anything to lead him to believe that he was restricted. And as a final point, there was no physical restraint of any sort during the entire time he was in the station house, giving these written statements. Thank you. All right. Thank you. Mr. Perez. I have just one point. Judge Carney, to your question about what was going on during the eight-hour period between the first and the second statements, may I read about 25 words from the Miranda opinion? Interrogation still takes place in privacy. Privacy results in secrecy, and this in turn results in a gap in our knowledge as to what in fact goes on in interrogation rooms. That's Miranda at page 448. Let me actually ask a question about that. I thought that this was not in an interrogation room where there was privacy. I thought there were other people coming and going. This was in a larger room in the precinct. He was in more than one room, and the court is correct. Whether he was in a secluded room or whether he's simply in the street narcotics enforcement unit room or in the robbery apprehension module, he's still surrounded by armed police officers. But still, doesn't that make a difference? I mean, if you're sitting alone in a room with a door shut behind you and isolated in that way, that suggests that you're being singled out and treated, as Miranda describes, in a way where force is being exerted against you. Whereas if you're having a conversation that goes on and off for hours and a lot of people are coming and going, that seems to me more compatible with the notion that you, too, are free to go. I actually think it's far more coercive to be surrounded. Under the circumstances for this particular petitioner, I think it's far more coercive to be surrounded by a bunch of detectives who are wearing guns. And it's the respondent themselves at pages 17 to 18 of their brief that acknowledge that they were sweating him the entire time. Garrity characterized their conversation with the petitioner as a continuous thing. You keep talking. He says something. You counter it, and you keep going. And then when you get to the end, you get to the written statement. So there clearly was a back and forth with this murder suspect over a period of hours. All right. Thank you very much. Thank you. Thank you. Well-reserved decision. Thank you, counsel.